Keith F. McADAMS, Plaintiff
and Appellee,

v.

Carmela McADAMS, Defendant
and Appellant.

Civ. No. 940204.

Supreme Court of North Dakota.

April 13, 1995.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, for defendant and appellant.

William D. Schmidt, Peterson, Schmitz, Moench & Schmidt, Bismarck, for plaintiff and appellee.

Appearance by Melvin L. Webster, guardian ad litem.

SANDSTROM, Justice.

Carmen McAdams appeals a divorce judgment and a denial of motion for a new trial arguing the district court clearly erred in splitting custody of the parties' two children.

She also contends the district court abused its discretion in denying her motion for a new trial based on an irregularity in the proceedings and insufficient evidence. We reverse the judgment and remand for a new trial.

## I

Carmen and Keith McAdams were married on February 28, 1988, in Italy. Carmen McAdams was an Italian citizen and Keith McAdams was in Italy coaching hockey. The couple have two children; Kenneth, born in 1989, and Bryan, born in 1991. Between 1988 and 1992, the McAdams family moved several times because of Keith McAdams' hockey coaching. During those years, the family occasionally lived with Keith McAdams' parents in New York, where he worked at his parents' business.

In September 1992, the McAdams family moved to Bismarck because Keith McAdams became an owner and coach of a Bismarck hockey team. Two weeks after arriving, Carmen McAdams returned to New York with the children without Keith McAdams' knowledge or consent. The Abused Adult Resource Center helped Carmen McAdams secretly move the children back to New York and arranged for them to live in a safe shelter.

Keith McAdams began a divorce action in North Dakota after learning Carmen McAdams had taken the children to New York. While in New York, Carmen McAdams also filed for divorce. The New York trial court dismissed the action holding jurisdiction was in North Dakota. An interim order was issued in North Dakota granting Keith McAdams temporary custody of the children, with Carmen McAdams to receive reasonable visitation.

The district court appointed a guardian ad litem and custody investigator. The custody investigator concluded Carmen McAdams should receive custody of both children. The custody investigator found Keith McAdams suffered from a personality disorder and likely abused Carmen McAdams.

At trial, Carmen McAdams relied mainly upon the custody investigator's report. Keith McAdams introduced evidence he was a good parent. He also introduced evidence of Carmen McAdams' physical abuse of Kenneth and other bad acts by her. Carmen McAdams admitted she let the air out of a moving van's tires when Keith McAdams moved, and the district court found she may have ransacked his apartment after he left.

Shortly before announcing its decision, the district court judge received a telephone call from the custody investigator. The investigator was upset because Keith McAdams had filed a complaint with her licensing board. The investigator asked if a decision would be reached soon. The judge told the custody investigator his decision, and what the likely result of the decision would be. The judge assured the investigator she performed an adequate investigation, and the court would support her against any charges by Keith McAdams.

The district court awarded split custody, giving custody of Kenneth to Keith McAdams and Bryan to Carmen McAdams. The court based its decision on Kenneth's alienation from his mother, which the court specifically found was caused by the father.

Carmen McAdams filed a motion for a new trial based on insufficient evidence and the irregularity of the proceedings. *See* Rule 59(b)(1), (6), N.D.R.Civ.P. She also requested the judge recuse himself. After denying the motion for new trial, the judge recused himself.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06(2). This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. §§ 28–27–01 and 28–27–02(4). The appeal is timely under Rule 4(a), N.D.R.App.P.

## II

Carmen McAdams argues the district court clearly erred by awarding custody of Kenneth to his father and custody of Bryan to her. She also argues the district court abused its discretion by denying her motion for a new trial based on an irregularity in the proceedings and insufficient evidence.

The district court's findings of fact regarding custody will not be disturbed un-

less clearly erroneous. *Leppert v. Leppert,* 519 N.W.2d 287, 290 (N.D.1994). A finding of fact is clearly erroneous if this Court is left with a definite and firm conviction a mistake has been made, or if the finding was induced by an erroneous view of the law. *Leppert.* Questions of law are fully reviewable. *Simons v. Gisvold,* 519 N.W.2d 585, 587 (N.D.1994).

■ We review a denial of a motion for a new trial under the abuse of discretion standard. *McAdoo v. McAdoo,* 492 N.W.2d 66, 69 (N.D.1992). The district court abuses its discretion by unreasonably, arbitrarily, or unconscionably denying a motion. *McAdoo.* An irregularity in the proceedings to justify a new trial must be one which is patent, obvious, or evident from the record. *Cendak Agri–Service, Inc. v. Hausman,* 275 N.W.2d 326, 329 (N.D.1979).

### A

Carmen McAdams argues the district court disregarded the custody investigator's report and failed to properly consider the statutory best interest factors for child custody found in N.D.C.C. § 14–09–06.2.

■ The district court cannot arbitrarily disregard expert testimony. *Brandt v. Brandt,* 523 N.W.2d 264, 266 (N.D.1994). The court may, however, assign the weight to be given the expert's opinion and does not have to accept the opinion as conclusive. *Brandt.* The court must award custody to the parent who will promote the best interests and welfare of the child. N.D.C.C. § 14–09–06.1.

The sole rationale employed by the district court for splitting custody was the alienation between Kenneth and Carmen McAdams. The district court found "the father has manipulated the older son, Kenneth, to where the alienation between Kenneth and his mother is very strong. The Court finds that this alienation exists because of the father's conduct." The district court then concluded Kenneth should be placed with his father because it would require "major and significant professional help" to reconcile Kenneth's relationship with his mother. The court also concluded Bryan was not yet significantly alienated from his mother, and would become completely alienated if placed with his father. Thus, Bryan should be placed with his mother.

■ This Court does not look favorably upon split custody. *Leppert* at 291. In *Leppert,* we reversed a split custody decision, in part, because the custodial parent was "poisoning the children's minds" against the noncustodial parent. *Leppert.* This Court has affirmed split custody decisions in cases of uncooperative parents, but for the opposite reason set forth by the district court in this case. Split custody is proper when one parent prevents visitation by the noncustodial parent because the split custody award furthers the child's best interests in maintaining a stable relationship with the noncustodial parent. *Gravning v. Gravning,* 389 N.W.2d 621, 623 (N.D.1986). A child's best interests are furthered by nurturing the child's relationship with the noncustodial parent. *Johnson v. Schlotman,* 502 N.W.2d 831, 834 (N.D. 1993). The district court's decision effectively terminates Kenneth's relationship with his mother. By awarding custody of Kenneth to his father, the parent who has poisoned Kenneth's mind and will likely continue to do so, Kenneth will not develop a healthy relationship with his mother. As we said in *Johnson:*

> "A parent does have a duty to not turn a child away from the other parent by 'poisoning the well.' Notwithstanding the perceived imperfections in the other parent, a custodial parent should, in the best interests of the children, nurture the children's relationship with the noncustodial parent."

■ We hold a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation.

The district court's split custody award is clearly erroneous. The district court failed to properly consider the children's best interests. There is insufficient evidence supporting the district court's custody decision, and the court abused its discretion by denying the motion for a new trial.

## B

Carmen McAdams asserts an irregularity in the proceedings in her motion for a new trial. The motion is based on a telephone conversation between the district court judge and the custody investigator before the decision was filed. During this conversation, the judge allegedly told the custody investigator his decision would result in giving each parent "a child to destroy," and by granting Keith McAdams' request to return to New York, both parties would likely leave the state and the court "will be rid of them and not have to deal with them again."

 Under N.D.C.C. § 14–09–06.3, the court may order a custody investigation upon motion of a party or upon its own motion. The investigator's report is supplied to the parties and the investigator must make the complete file underlying the report available. N.D.C.C. § 14–09–06.3(3). A party may call the investigator for cross-examination at the hearing. For a district court to use a custody investigator's report, it should be made part of the evidentiary record. *Thorlaksen v. Thorlaksen*, 453 N.W.2d 770, 773 (N.D.1990). These procedural safeguards track those found in Rule 706, N.D.R.Evid. Under Rule 706, the court may appoint an expert witness upon motion of a party or its own motion. The expert's findings shall be available to the parties. The parties may depose the expert, and the expert is subject to cross-examination by each party. The rule specifically provides "the witness may be called to testify by the court or any party." Rule 706(a), N.D.R.Evid.

 Rule 614, N.D.R.Evid., provides the court may call or interrogate witnesses. "The rule, however, clearly allows the court to call the witness to testify only on the record under oath, and specifically provides that all parties are entitled to cross-examine the witness." *Wood v. Krenz*, 392 N.W.2d 395, 398 (N.D.1986).

The Code of Judicial Conduct provides "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except [in specified situations]." N.D.C.Jud.Cond. Canon 3(B)(7). The exceptions do not apply in this case.

These rules ensure the court's decision is based on the evidence adduced at trial. "One of the fundamental precepts of our judicial system is that the finder of fact must rely only on the evidence presented in court." *Wood.*

 The district court has not denied the telephone conversation between the court and the custody investigator occurred. The substance of the conversation does not indicate the judge relied on any information given by the investigator. The judge stated he had already reached a decision. Following denial of the motion for new trial, the judge recused himself. The communication does not appear to have influenced the judge's decision, although it may create an appearance of impropriety. Because the communication was not prejudicial to Carmen McAdams, we decline to order a new trial on those grounds. *See GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 65 (N.D.1993). The district court did not abuse its discretion by denying the motion for a new trial based on an irregularity in the proceedings.

## III

The judgment of the district court is reversed, and the case is remanded for a new trial which, based on the recusal, will be before a different judge.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.