1997 ND 115

**Carmen DINIUS, n/k/a, Carmen Oswald, Plaintiff and Appellee,**

v.

**John DINIUS, Defendant and Appellant.**

**Civil No. 960287.**

Supreme Court of North Dakota.

June 3, 1997.

Robert J. Snyder, of Snyder Coles Lawyers, Bismarck, for defendant and appellant.

Orell D. Schmitz, of Schmitz, Moench & Schmidt, Bismarck, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] John Dinius appeals from the district court's judgment finding him the perpetrator of domestic violence and granting Carmen Oswald, formerly known as Carmen Dinius, custody of their children. We reverse.

[¶ 2] In 1989, John and Carmen Dinius divorced. That same year, John was awarded the custody of their four children. Carmen appealed, and this court upheld the district court's custody award. *Dinius v. Dinius*, 448 N.W.2d 210 (N.D.1989).

[¶ 3] Three years after the custody award, the eldest child, Angela, expressed a preference to live with her mother. In 1992, custody of Angela was transferred to Carmen, leaving custody of the three younger boys with John. At that time, a visitation schedule was established and neither party was ordered to pay support.

[¶ 4] On March 3, 1995, John moved for child support. Carmen countered seeking child support for Angela. On December 28, 1995, the district court issued a second amended divorce judgment, ordering John to pay Carmen $82 monthly child support from March 1995 to February 1996. Thereafter, the court ordered Carmen to pay John $554 monthly child support.

[¶ 5] In May 1996, Carmen moved for custody of the three boys, or alternatively, moved for a specified visitation schedule. In her motion to transfer custody, Carmen alleged John was a perpetrator of domestic violence. The district court found John to be a perpetrator of domestic violence based on two incidents involving Angela which occurred in 1990. The court granted Carmen custody of the two youngest boys, Jordan and Jarett, and allowed Landon, an adult, to live with whomever he chose.

[¶ 6] John appealed the decision and requested this court to stay the transfer pending the appeal. On October 30, 1996, we granted the stay and remanded the case to the district court to determine John's potential child support obligation.

[¶ 7] On November 22, 1996, the district court issued a third amended divorce judgment specifying John's child support obligation. John appealed and asked the court to stay the judgment and order Carmen to pay child support pending the appeal, as outlined in the second amended divorce judgment. On December 18, 1996, we stayed the judgment, and ordered that Carmen pay child support. John appeals.

[¶ 8] John argues the district court erred by determining he was the perpetrator of domestic violence. John argues he did not commit domestic violence, but rather was

disciplining Angela as permitted under N.D.C.C. § 12.1–05–05(1).

[¶ 9] In its order granting Carmen custody, the district court found John committed two acts of domestic violence against Angela in 1990. One incident involved John hitting Angela in the face in a dispute over washing dishes. Another incident involved pulling Angela from a car by grabbing her by the arm and hair. In its findings, the district court stated:

"Angela Dinius testified that John hit her 'on the face' on one occasion in 1990. John allegedly became angry with her because she was doing the dishes too slowly. Angela testified that on another occasion in December of 1990, John pulled her out of a car by grabbing her by the arm and by her hair. Angela testified that as a result of the latter incident, 'I had marks on my arm. And I had some bruises on my head.'

\* \* \* \* \* \*

The Court finds that John did commit two acts of domestic violence against Angela Dinius. From this the Court concludes there exists a material change in circumstances."

[¶ 10] The district court invoked the presumption against custody and ordered a change of custody to Carmen. In reaching its decision, the district court did not determine whether John's acts constituted reasonable disciplinary measures.

[¶ 11] In the original placement of a child following a divorce, the district court need only determine the best interests and welfare of the child. *Gould v. Miller*, 488 N.W.2d 42, 43 (N.D.1992). To modify an original custodial placement, the district court must apply a two-step analysis. *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 201 (N.D.1995). First, the court must determine whether there has been a significant change in circumstances since the original custody placement. *Klose v. Klose*, 524 N.W.2d 94, 95 (N.D.1994). Secondly, if a significant change of circumstances exists, the court must determine whether that change compels a change of custody in the child's best

interests. *Barstad v. Barstad*, 499 N.W.2d 584, 587 (N.D.1993).

[¶ 12] A district court's decision to modify custody is a finding of fact subject to the clearly erroneous standard of review. *Blotske v. Leidholm*, 487 N.W.2d 607, 609–10 (N.D.1992); Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous "if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *McDonough v. Murphy*, 539 N.W.2d 313, 316 (N.D.1995).

[¶ 13] Under N.D.C.C. § 14–09–06.2(1)(j), there is a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded custody of the children:

"If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child."

[¶ 14] The statute adopts by reference the definition of domestic violence in N.D.C.C. § 14–07.1–01(2):

" 'Domestic violence' includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members."

[¶ 15] However, N.D.C.C. § 14–07.1–01(2) is not the only statute discussing the use of force in a household. In circumstances concerning force used on children, N.D.C.C. § 12.1–05–05(1) is also relevant. Under N.D.C.C. § 12.1–05–05(1) the legislature grants parents the right to use reasonable force to discipline their children. Section 12.1–05–05(1), N.D.C.C., states:

"[Parents] may use reasonable force upon the minor for the purpose of safeguarding or promoting his welfare, including prevention and punishment of his misconduct, and the maintenance of proper discipline.... The force used must not create a substan-

tial risk of death, serious bodily injury, disfigurement, or gross degradation."

[¶ 16] Clearly, an ambiguity arises in circumstances when a parent uses force to discipline a child. Under N.D.C.C. § 14-07.1-01(2), an assault on a family member is considered domestic violence. Yet, under N.D.C.C. § 12.1-05-05(1), parents have the right to use reasonable force to discipline their children. Section 14-07.1-01(2), N.D.C.C., provides a very broad definition of domestic violence, addressing *any* member of a household who uses force on *any* other member of the household. Section 12.1-05-05(1), N.D.C.C., specifically addresses the relationship between parents and children. Attempting to harmonize these statutes it appears the legislature intended that reasonable force used by parents for the purposes listed in N.D.C.C. § 12.1-05-05(1) would not constitute domestic violence. Normally, if this were all the guidance afforded to us by the legislature, we would remand for a determination of whether the force used by John was reasonable, under the circumstances. The legislature, however, has also given us recent help in understanding the meaning of domestic violence for purposes of N.D.C.C. § 14-09-06.2(1)(j).

[¶ 17] In 1997, the legislature amended N.D.C.C. § 14-09-06.2(1)(j). N.D.Sess.Laws ch. 147, § 2 (1997). Although the amended statute did not take effect until April 3, 1997, after the district court's custody decision, it contains a clear instruction to help us determine North Dakota law concerning domestic violence. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Association*, 337 N.W.2d 427, 431-32 (N.D.1983) (looking to new law for guidance). In order to help us determine whether the alleged use of force might constitute domestic violence, we will examine the conduct in light of the recent amendment.

[¶ 18] Under the amendment, the rebuttable presumption against the parent who has committed domestic violence continues to exist. However, the legislature clarified the degree of domestic violence required to invoke the presumption. The amended statute requires "*one incident of domestic violence which resulted in serious bodily injury* or

involved the use of a dangerous weapon or ... *a pattern of domestic violence within a reasonable time proximate to the proceeding.*" N.D.Sess.Laws ch. 147, § 2 (1997) (emphasis added).

[¶ 19] Here, the district court invoked the presumption against John for two acts committed in 1990 against Angela. The acts committed were seven years ago, quite remote in time. The district court did not find John to have committed any acts of domestic violence since that time. *See Krank v. Krank*, 529 N.W.2d 844, 851 (N.D.1995) (Neumann, J., concurring) (noting a pattern of good conduct over time could suggest a violent individual has been rehabilitated). Furthermore, the district court found only two acts of domestic violence: once when John hit Angela in the face in a dispute over the dishes, and once when John pulled Angela from the car. According to the record, there is no evidence suggesting either of these acts involved serious bodily injury or that the two suggest a pattern of domestic violence. *See Krank*, 529 N.W.2d at 851 (Meschke, J., concurring) (suggesting that the presumption against custody should be invoked if the violent act is significant enough and not too remote). In light of the amendment, we do not believe John's actions constitute domestic violence required to invoke the presumption against custody.

[¶ 20] We, therefore, reverse the district court's decision, instructing the district court to deny the motion to change custody of the two youngest children.

[¶ 21] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM JJ., concur.